**Janet R. DOSCHADIS and Lucille Durchenwald, Plaintiffs,**

v.

**ANAMOSA COMMUNITY SCHOOL DISTRICT, Randall James McCaulley, and John Moore, Defendants.**

No. C97–0031.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Sept. 4, 1998.

Kevin J. Visser, Thomas D. Wolle, Rebecca L. Smith, Moyer Bergman, Cedar Rapids, IA, for Janet R. Doschadis, Lucille Durchenwald, Plaintiffs.

Terry J. Abernathy, Thad J. Collins, Pickens Barnes & Abernathy, Cedar Rapids, IA, for Anamosa Community School Dist., Randall James McCaulley, John Thomas Moore, Defendants.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendants' May 22, 1998 Motion for Summary Judgment. The court held a hearing on these motions on August 6, 1998, at which the plaintiffs were present and represented by Tom Wolle and Kevin Visser. The defendants were represented by Thad Collins and Terry Abernathy. The parties have consented to the exercise of jurisdiction by United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The defendants' Motion for Summary Judgment on the issue of claim preclusion is granted.

### SUMMARY JUDGMENT

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir.1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (quoting *Impro Prod., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)).

### Statement of Material Facts Not in Dispute

Plaintiffs were high school teachers in the Anamosa Community School District prior to the termination of their employment in August of 1995. Pursuant to *Code of Iowa,* § 279.15, the Superintendent of Anamosa Community School District, Randall McCaulley, notified each of the plaintiffs in April of 1995 that he was recommending the termination of their teaching contracts. Each of the notices contained the following reasons in support of the recommendation:

1. Inappropriate display of adult affection observed by students.
2. Conversion of school property.
3. Misappropriation of school property.
4. Poor role model.
5. Unprofessional conduct.
6. Inappropriate student supervision.
7. Retaliation against students and staff.
8. Inappropriate student discipline.

Plaintiffs contested the Superintendent's recommendation and the Board of Directors of the Anamosa Community School District held a private hearing between May 24, 1995 and August 1, 1995. The hearing took place over nine days and the School Board heard over forty witnesses. All parties were represented by counsel.

· The School Board began its deliberations on August 1, 1995, and concluded them on August 5, 1995. On August 9, 1995, the School Board issued a 32–page decision for each plaintiff, concluding that the Superintendent had met his burden of proof on grounds 2 through 8 above. The Board concluded that just cause existed for the termination of both plaintiffs' contracts.

The plaintiffs immediately appealed the School Board's decision. Administrative Law Judges were assigned to and decided each of these appeals. In each case, the ALJ reversed the School Board's decision. Plaintiff Durchenwald's appeal was sustained December 22, 1995. Plaintiff Doschadis' appeal was sustained December 31, 1995.

The School Board appealed both decisions to the Iowa District Court. The appeals were consolidated. In an order dated June 18, 1996, the Iowa District Court affirmed both ALJ decisions. However, on appeal to the Iowa Court of Appeals, the District Court was reversed and the decision to terminate each of the plaintiffs' teaching contracts was reinstated. The Iowa Supreme Court declined further review.

Meanwhile, plaintiffs filed a charge of sex discrimination with the Equal Opportunity Employment Commission and the Iowa Civil Rights Commission on October 9, 1995, alleging violations of Title VII of the Civil Rights Act of 1964 and Chapter 216 of the Code of Iowa. On December 5, 1996, and November 12, 1996, plaintiffs were given a Notice of Right to Sue by the Commissions, enabling the plaintiffs to bring this action in federal or state court. This action was commenced February 6, 1997.

## CONCLUSIONS OF LAW

The defendants contend that this case is barred by the doctrine of res judicata, specifically claim preclusion. Because the Iowa Court of Appeals found that the terminations were supported by "just cause," they believe the plaintiffs are precluded from maintaining this action in which they claim that the terminations were motivated by gender discrimination. The plaintiffs contend that they did not litigate their gender discrimination claims in state court, were not required to litigate them in state court, and could not have litigated them while they were in the process of exhausting their administrative remedies before the EEOC and the ICRC.

■ Although the plaintiffs characterize the basis for the summary judgment motion as "issue preclusion," it is clear that the defendants are asserting claim preclusion. Claim preclusion means that further litigation on the claim is prohibited. Issue preclusion means that further litigation on a specific issue is barred. *Weishaar v. Snap–On–Tools Corporation*, 582 N.W.2d 177 (1998).

### Claim Preclusion

Claim preclusion is based on the principle that a party may not split or try her claim piecemeal, but must put in issue and try her entire claim or put forth her entire defense in the case on trial. An adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination. A party must litigate all matters growing out of his claim at one time and not in separate actions. *Iowa Coal Mining Company, Inc. v. Monroe County*, 555 N.W.2d 418, 441 (Iowa, 1996). The general rule is that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Shumaker v. Iowa Department of Transportation*, 541 N.W.2d 850, 852 (Iowa, 1995). A party is obliged to raise all of its different theories of recovery, based on the same transaction or suffer the consequences of claim preclusion. *Suehl v. Suehl*, 544 N.W.2d 642, 645 (Iowa Ct.App.1995).

■ In our system of jurisprudence, the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). ·

Pursuant to 28 U.S.C. § 1738, federal courts are required to give the same full faith and credit to decisions of the state court as those courts give their own decisions. *Kremer, supra,* at 466, 102 S.Ct. 1883. *Yancy v. McDevitt,* 802 F.2d 1025, 1027 (8th Cir.1986). Thus, Iowa law governs the preclusive effect of the decision of the Court of Appeals to reinstate the plaintiffs' contract terminations.

### State Law of Claim Preclusion

The Iowa law of claim preclusion closely follows the Restatement (Second) of Judgments. *Shumaker, supra,* at 852. The Supreme Court of Iowa also relies in part on federal cases that are based on the Restatement. *Id.* The general rule comes from Restatement (Second) of Judgments, § 24, which provides:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

The difficulty here, as in many cases, is in the determination of whether the plaintiffs' state court litigation arising out of their termination is "all or any part of the transaction, or series of connected transactions" out of which this action in federal court arose. This is because the corollary of Section 24 provides that the right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined. *Weishaar, supra.*

In general, the expression "transaction or a series of transactions" connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination of whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held to be precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series. *Weishaar, supra,* quoting *Leuchtenmacher v. Farm Bureau Mutual Insurance Company,* 460 N.W.2d 858, 860 (Iowa, 1990).

In *Iowa Coal Mining Company v. Monroe County, supra,* the court stated that to determine whether the cause of action is the same in the former and present actions, the court examines (1) the protected right; (2) the alleged wrong; and (3) the relevant evidence. If the same facts or evidence would sustain both actions, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other. *Iowa Coal, supra,* at 441.

### Plaintiffs' State Court Proceedings

Pursuant to the Code of Iowa, a teacher's contract can only be terminated by a school board after a hearing for "just cause." *Code of Iowa,* § 279.15(2). The Code then provides for an appeal by the teacher to an adjudicator (ALJ).

> The adjudicator may affirm Board action or remand to the Board for further proceedings. The adjudicator shall reverse, modify, or grant any appropriate relief from the Board action if substantial rights of the teacher have been prejudiced because the Board action is: (1) in violation of a Board rule or policy or contract; or (2) unsupported by a preponderance of the competent evidence in the record made before the Board when that record is viewed as a whole; or (3) unreasonable, arbitrary or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

*Code of Iowa,* § 279.17.

If either party rejects the adjudicator's decision, it may file an appeal to the District

Court of the county in which the administrative office of the school district is located. The court shall reverse, modify, or grant any other appropriate relief from the Board decision or the adjudicator's decision equitable or legal and including declaratory relief if substantial rights of the petitioner have been prejudiced because the action is: (1) in violation of constitutional or statutory provisions; ... or (4) made upon unlawful procedure; or (5) affected by other error of law; ... or (7) unreasonable, arbitrary, or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Code of Iowa*, § 279.18.

■ The term "just cause" means that the decision must be reasonable and there should not be an abuse of the conferred right. It must be a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. *Briggs v. Board of Directors of Hinton Community School District*, 282 N.W.2d 740 (Iowa 1979). As the Supreme Court of Iowa stated in *Board of Directors of Starmont Community School District v. Banke*, 498 N.W.2d 697 (Iowa 1993):

Probably no inflexible "just cause" definition we could devise would be adequate to measure the myriad of situations which may surface in future litigation. It is sufficient here to hold that in the context of teacher fault, a "just cause" is one which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance including leadership and role model effectiveness. It must include the concept that a school district is not married to mediocrity, but may dismiss personnel who are neither performing high quality work nor improv-

ing in performance. On the other hand, "just cause" cannot include reasons which are arbitrary, unfair, or generated out of some petty vendetta.

Thus, the teacher has the ability to litigate Constitutional and statutory claims, such as those brought in this case, in the state administrative and judicial proceedings. The Eighth Circuit Court of Appeals recognized this in *Yancy v. McDevitt*, 802 F.2d 1025 (8th Cir.1986).

### Application of Claim Preclusion

■ In *West v. Wessels*, 534 N.W.2d 396 (Iowa 1995), a teacher's contract determination was upheld on judicial review by the Iowa District Court and by the Iowa Court of Appeals. The teacher then brought an action alleging five state law tort theories and civil rights violations actionable under 42 U.S.C. § 1983. The Supreme Court of Iowa concluded that all the teacher's claims for money damages that were in some way dependent upon the termination of his contract with the school district or measured by the loss of that contract were barred by claim preclusion. The case is clearly strong authority for the defendants here.

The plaintiffs contend that even though the state courts conclusively determined that the plaintiffs were fired for just cause, they can still prevail in the Title VII action because the finding of just cause does not preclude the possibility that gender was also a motivating factor for the decision to terminate their contracts. They cite *Tolefree v. City of Kansas City, Mo.*, 980 F.2d 1171 (8th Cir. 1992), and *Bechtold v. City of Rosemount*, 104 F.3d 1062 (8th Cir.1997), for this proposition. However, when discussing this proposition, *Tolefree* and *Bechtold* were issue preclusion, not claim preclusion, cases.[1] Under issue preclusion, the issues in the former and present actions have to be identical. Because the administrative issues were not the same as the Title VII issues, issue preclusion did not apply.[2]

---

1. *Tolefree* was also decided on claim preclusion grounds but the elements of Missouri claim preclusion are different from and considerably weaker than Iowa law on this issue.

2. It is interesting to note that in a similar case decided under the Iowa teacher termination statute, the Eighth Circuit Court of Appeals applied

issue preclusion finding that a teacher who claimed race discrimination in his teacher contract termination proceedings was subsequently precluded from bringing 42 U.S.C. § 1981 and 1983 claims in federal court. The court in *Yancy* found that race discrimination could not be "just cause" for the termination of a teacher's contract, as that term is defined in the Iowa Code.

Upon the foregoing

IT IS ORDERED, that defendants' motion for summary judgment is granted. The Clerk shall enter judgment for the defendants.[3]

The plaintiff in *Yancy* still maintained that the board could have terminated his contract if it found that his behavior was improper, regardless of whether the termination was prompted by racial discrimination. The Eighth Circuit Court of Appeals stated, "This argument is frivolous." *Yancy, supra*, at 1031. The court further stated, "The school board could not logically have found that the charges were true unless it also found that they were not racially motivated fabrica-

tions." *Id.* Thus, a teacher has the right to pursue claims of discrimination in Iowa teacher contract termination proceedings.

3. Plaintiffs agreed that their intentional interference with contract claim is barred by issue preclusion. They further acknowledge that their defamation and invasion of privacy claims are barred by qualified immunity.