# IN THE COURT OF APPEALS OF IOWA

No. 20-0962
Filed October 6, 2021

**TIMOTHY L. JACKSON and**
**JUDITH ANN JACKSON,**
    Plaintiffs-Appellants,

**vs.**

**FYE EXCAVATING, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Wyatt Peterson, Judge.

Homeowners appeal the district court order granting summary judgment to Fye Excavating, Inc. on its defense of res judicata. **AFFIRMED.**

Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellants.

Jeffrey C. McDaniel of Brooks Law Firm, P.C., Rock Island, Illinois, for appellee.

Considered by Vaitheswaran, P.J. and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

After the city of Danville obtained an easement across property to install a sewer line, Timothy and Judith Jackson brought an action for damages related to the loss of trees during construction. The district court denied their request and affirmed the county commission's award of $2000 in damages for the difference in property value before and after the easement. Two years later, the Jacksons also sued the city's contractor, Fye Excavating, Inc. (Fye), for damages that occurred during the installation. They asked the court to award $53,380 based on the value of trees destroyed on their property. In its defense, Fye alleged both claim and issue preclusion and moved for summary judgment. The court granted Fye's motion on both grounds. The Jacksons now appeal, claiming the court erred in finding their subsequent claims barred by the prior action. Because the court properly applied the principles of issue and claim preclusion, we affirm the grant of summary judgment.

## I. Facts and Prior Proceedings

The Jacksons own two adjacent parcels of real estate in Danville: a west parcel, 57A, and an east parcel, 57B. When the Jacksons purchased their property, a sanitary sewer line ran north to south along the eastern edge of parcel 57B. Over time, a grove of trees and weeds have grown in the area.

In early 2014, the city hired an engineering consulting firm to inspect its wastewater treatment system. The engineers recommended the city replace existing sanitary sewer lines in nine locations, including the Jacksons' property. That spring, the city sent a letter to the Jacksons proposing to obtain a temporary and permanent easement across their east parcel to install the new sewer line.

When they refused to grant the easement, the city acquired the property by condemnation.

While awaiting the hearing, the city contracted with Fye to perform the excavation and construction of the sewer lines. In April 2015, the county compensation commission awarded the Jacksons $2000 for the easement. In challenging that assessment to the district court, the Jacksons argued they were entitled to damages for the easement destroying "certain personal property . . . including trees." They asked to be awarded $53,380 based on the projected value of the trees on their property.

In June 2016, the court denied their request, finding "no evidence that the removal of a portion of the trees in the area has adversely affected the value or enjoyment of the property." The court determined the Jacksons suffered no loss beyond "the change in the fair market value of real estate as a result of a temporary and permanent sanitary sewer easement being taken across the property." With that in mind, the court affirmed the commission's award of $2000.[1]

Two years after that adjudication, the Jacksons brought a separate action against Fye, again seeking damages for the destruction of trees during the installation of the sewer line across their property. Their petition alleged that, in July 2015, Fye cut down $53,380 worth of the trees without permission, failed to clean up their property after completing the project, and failed to restore their property to its original condition. They also sought treble damages under Iowa Code section 658.4 (2018).

---

[1] After filing a notice of appeal with the supreme court, the Jacksons dismissed that appeal with prejudice.

Fye answered and raised both issue and claim preclusion as affirmative defenses. In moving for summary judgment on those grounds, Fye asserted: "The issue regarding the damages to which [the Jacksons] were allowed due to the destruction of the trees on their property was fully and fairly litigated in the suit against the City . . . ." After a contested hearing, the district court granted Fye's motion. The court agreed that principles of res judicata precluded the Jacksons from relitigating their claims related to the trees removed from their property. The Jacksons appeal.

## II. Scope and Standard of Review

We review a summary judgment ruling for correction of legal error. *Bauer v. Brinkman*, 958 N.W.2d 194, 197 (Iowa 2021). We will uphold the ruling if the record shows no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* "Summary judgment is appropriate if the record reveals only a conflict concerning the legal consequences of undisputed facts." *EMC Ins. Grp., Inc. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021) (quoting *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020)).

## III. Analysis

The Jacksons argue the district court erred in granting Fye's motion for summary judgment on principles of res judicata. This doctrine encompasses both claim and issue preclusion. *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011). The Jacksons contend res judicata does not apply because (1) the court did not consider their claim of damages for trespass in the prior action, (2) Fye was not a party nor in privity with a party to that action, and (3) their claims related to Fye's

involvement in the sewer project were never raised and litigated. Because Fye alleged both defenses, we will address each in turn.

## A. Claim Preclusion

To prove claim preclusion, the moving party must establish three elements:

(1) the parties in the first and second action are the same parties or parties in privity, (2) there was a final judgment on the merits in the first action, and (3) the claim in the second suit could have been fully and fairly adjudicated in the prior case (i.e., both suits involve the same cause of action).

*Id.* at 836 (citing *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002)). "A second claim is likely to be barred by claim preclusion where the acts complained of, and the recovery demanded are the same or where the same evidence will support both actions." *Id.* (citation omitted). In essence, claim preclusion prevents a party from taking a "second bite" at litigation to recover for the same wrong. *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 517 (Iowa 1998). Thus, this defense is a bar "not only to matters actually determined in an earlier action but to all relevant matters that could have been determined." *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998) (quoting *Shumaker v. Iowa Dep't of Transp.*, 541 N.W.2d 850, 851 (Iowa 1995)).

Against that backdrop, we turn to the first element. There is no dispute Fye was not a party to the prior action between the Jacksons and the city. Both parties focus on privity. In addressing this alternative, the district court cited *Tomka v. Hoechst Celanese Corp.* for the proposition that "[i]f the parties have contracted with each other, they are in privity." 528 N.W.2d 103, 107 (Iowa 1995). Relying on *Tomka*, Fye claims it has contractual privity with the city, a party to the prior

action. *See id.* The Jacksons counter that because "Fye did not acquire, succeed or inherit the [city's] position in the case," it lacks privity.

Although the parties argue the specific ways to establish privity, that is not the controlling issue. When, as here, a party invokes claim preclusion as a defense, we apply a broader status test to determine "if the party against whom claim preclusion is invoked had a full and fair opportunity to litigate the claim." *Shivvers v. Hertz Farm Mgmt., Inc.*, 595 N.W.2d 476, 481 (Iowa 1999). In this context, privity exists if the Jacksons could have litigated their claims against Fye in the prior action but failed to do so. *See Est. of Naeve by Naeve v. FBL Fin. Grp., Inc.*, No. 18-0615, 2019 WL 2879936, at *4 (Iowa Ct. App. July 3, 2019).

Applying that broader test, we find ample evidence Fye was in privity with the city. By the time of trial in the condemnation action, the city had been working with Fye for five months preparing to install the sewer line on the Jacksons' property.[2] Not only were the Jacksons on notice of Fye's involvement, but they also knew about "the planned construction zone." Their June 2015 petition requested $53,380 for damages to "personal property . . ., including trees," even though the installation of the sewer line had not yet started. The timing suggests the Jacksons anticipated the damages stemming from Fye's involvement and thus could have brought their claims against Fye when they had the chance. *See B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 286 (Iowa 1976) ("A party

---

[2] In April 2015, the commission awarded the Jacksons $2000 as representative of the value of the temporary and permanent easement. Construction on the sewer line started on July 20, 2015. The work took approximately one week to complete. In August of the same year, Fye returned and seeded down the area. The bench trial on the condemnation commenced April 12, 2016.

must litigate all matters growing out of his claim at one time and not in separate actions.").

These same facts undermine the Jacksons' contention that "Fye didn't enter the matter and damage [their] property until after the appeal of the Condemnation proceeding was underway." Because their initial claim against the city hinged on Fye's imminent actions, the Jacksons cannot now argue that those damages did not occur until after the project was completed. Indeed, the two complaints only differ in the framing of the issues. While the initial complaint faulted the city for removing the trees, the June 2018 petition alleged: "The value of the trees cut down by [Fye] exceeds $53,380." Given that lack of distinction, the first element is satisfied.

We next consider whether there was a final judgment on the merits in the prior litigation. The phrase "on the merits" means "[a] judgment based on the evidence rather than on technical or procedural grounds." *Peppmeier v. Murphy*, 708 N.W.2d 57, 64 (Iowa 2005) (alteration in original) (quoting *Black's Law Dictionary* 860 (8th ed. 2004)). The Jacksons suggest the district court did not rule on the merits of their claims for damages based on trespass. They assert, "The Court specifically stated that the condemnation was not a trespass case and that the damages available to a trespass proceeding were not available here. The Court could not consider the report of [their] expert witness Andrew Lueck."

Contrary to their assertion, the court *did* consider both sides' expert evidence on the value of the trees before rejecting trespass as a basis for damages. Although the court distinguished the condemnation proceeding, it still made findings specific to trespass. For instance, the court found the "trees did not

have any intrinsic value, such as a windbreak would have, for the family home."[3] It also determined that the Jacksons could not claim their trees as "separate personal property that was damaged" by the easement. In other words, the court did not assess damages based on the individual value of the trees because it concluded the trees had no value apart from the real estate. Thus, the order affirming the commission's award was a final judgment on the merits that the Jacksons were not entitled to damages for the destruction of trees on their property no matter if the city or Fye was responsible. *See Peppmeier*, 708 N.W.2d at 66 (holding a final judgment rejecting a claim against a principal bars a claim against the agent if it is "based on the *same* facts").

Left to resolve is whether "the claim in the second suit could have been fully and fairly adjudicated in the prior case." *Pavone*, 807 N.W.2d at 836. This final element is satisfied when "both suits involve the same cause of action." *Id.* In determining what constitutes the same cause of action, we consider whether both cases involve the same operative facts, rely on the same evidence, and allege the same wrong. *See generally Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 441–43 (Iowa 1996) (collecting cases). Weighing those key factors, we conclude the Jacksons' claims of damages against the city and Fye are the same.

Both actions stem from the same transaction: the installation of the sewer line. Based on that transaction, the same evidence would be probative to show the amount of damages caused by the removal of trees during installation, the

---

[3] In support, the court found credible the testimony of the city's expert appraiser, who gave "no value to the trees on the property as they were not timber quality and would not be sold."

alleged wrong in both cases. At first, the taking of the easement was the culprit. Then the act of cutting down the trees caused the alleged harm. In any event, the demand for recovery has remained the same: damages for the value of the trees removed during the sewer installation. The only difference between the first and second action is the theory of recovery. That alone is insufficient to establish a new cause of action. *See B & B Asphalt Co.*, 242 N.W.2d at 287. Thus, the district court correctly held claim preclusion barred the Jacksons from bringing the trespass action.

## B. Issue Preclusion

Unlike claim preclusion, issue preclusion "prevents a party to a prior action in which a judgment has been rendered from relitigating in a subsequent action issues raised and resolved in the previous action." *Penn*, 577 N.W.2d at 398 (quoting *Brown v. Kassouf*, 558 N.W.2d 161, 163 (Iowa 1997)). To prove this defense, the moving party must establish these elements:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Linn v. Montgomery*, 903 N.W.2d 337, 344 (Iowa 2017) (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)).

The Jacksons contend issue preclusion is also not a bar to their second action because "[t]he remedies available in a trespass case differ from those available in a condemnation proceeding," such as treble damages. *See* Iowa Code § 658.4. Reprising their argument against claim preclusion, they maintain that the damages issue for trespass was not litigated in the prior action because the district

court "did not use the individual value of each tree as a basis to evaluate the damages."

Defending the summary judgment ruling, Fye urges "the issue of damages done to the land, as well as any separate damage claim, arising from the value of the trees was previously raised and litigated." It asserts the second action is no more than "a second bite of the apple related to damages for the same loss of personal property." We agree.

As stated before, the court reached a final judgment on the merits that the Jacksons could not recover damages based on the value of trees on their property. While the Jacksons insist that the ruling did not address their trespass claim, the record belies their viewpoint. After hearing the evidence presented in the first action, the court acknowledged: "In this case [the Jacksons] are asking the court to find that the trees growing on their property constituted such personal property. They are asking for compensation for each of the trees on their property." Because their claim related to the loss of the trees, the court believed they were seeking damages for trespass, an issue identical to the issue raised in the second action.

In rejecting their claim, the court held the trees had no intrinsic value or special use for which damages could be awarded. While the court could have addressed the valuations of damages for trespass, it did not have to do so once it decided the trees lacked any value. *See Bangert v. Osceola Cnty.*, 456 N.W.2d 183, 190-91 (Iowa 1990) (noting different methods of recovery should be considered if trees are maintained for special use, such as "for shade and windbreaks, as well as for environmental, wildlife and special landmark purposes," and "an intrinsic loss has occurred"). Because that determination was necessary

and essential to the resulting judgment, the Jacksons are precluded from relitigating the same claim.  Thus, we affirm the grant of summary judgment.

**AFFIRMED.**